# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| KITISHA KIMBROUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-01934-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Kitisha Kimbrough, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income. (Doc. 1).[2] Kimbrough timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review. 42 U.S.C §§ 405(g), 1383(c)(3). As discussed below, the Commissioner's decision is due to be affirmed.

## I.   PROCEDURAL HISTORY

Kimbrough has a high school education and previously worked as a nurse

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  (Doc. 11).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __). Citations to the administrative record refer to the page numbers assigned by the Commissioner and appear in the following format: (R. __).

assistant, housekeeper, cook, and phlebotomist. (R. 39-40, 970). Kimbrough originally applied for disability on May 7, 2014, alleging she became disabled on November 30, 2013, due to bipolar disorder and back pain; she was 37 at the time of her alleged disability onset. (R. 183-92, 240; *see* R. 40). This is Kimbrough's second appeal on that application.

After the Social Security Administration initially denied Kimbrough's claim, an ALJ held a hearing in March 2016 and issued an unfavorable decision on June 2, 2016 (R. 17-30, 37-56). Kimbrough exhausted her claim administratively before appealing to a court in this district. (R. 1-7, 1085-1108); *see Kimbrough v. Berryhill*, No. 17-1228-KOB (N.D. Ala. *remanded* Mar. 21, 2019). The court remanded the matter for further proceedings, specifically instructing the Commissioner to consider Kimbrough's testimony regarding side effects of her medication. (R. 1108). On remand, the ALJ held a second hearing on December 3, 2019. (R. 980-1018). On December 17, 2019, the ALJ issued a second unfavorable decision. (R. 953-72). After exhausting her administrative remedies, Kimbrough appealed to this court. (R. 942-49; Doc. 1). Kimbrough was 43 when the ALJ issued the decision at issue here. (*See* R. 40).

## II.   LEGAL FRAMEWORK AND THE ALJ'S EVALUATION

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show she was disabled between her alleged onset disability date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.*; *id* at § 404.1520(b). At the first step, the ALJ determined Kimbrough met the SSA's insured status requirements through September 30, 2022. (R. 956). She further determined that although Kimbrough worked after the alleged disability onset, this work activity did not rise to the level of substantial gainful activity. (*Id.*).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is

expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.*; *id.* at § 404.1520(c). At the second step, the ALJ determined Kimbrough has the following severe impairments: osteoarthritis, lumbar spondylosis, degenerative joint disease, left shoulder tendinitis, status post meniscal tear, kidney disease, asthma, obstructive sleep apnea, obesity, and bipolar disorder. (R. 956).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.*; *id.* at § 404.1520(d). At the third step, the ALJ determined Kimbrough does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (R. at 958).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. §

4

404.1520(e). At the fourth step, the Commissioner compares an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv), (e). If the claimant can perform past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv).

If the claimant is not capable of performing her past relevant work, the Commissioner will determine whether the claimant can perform other work that exists in substantial numbers in the national economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1). If the claimant can perform other work, the Commissioner will find the claimant is not disabled. *Id.* If the claimant cannot perform other work, the Commissioner will find the claimant is disabled. *Id.*

Before proceeding to the fourth step, the ALJ found Kimbrough's impairments could reasonably be expected to cause some of her alleged symptoms but her statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 962). The ALJ determined Kimbrough's RFC allowed her to perform light work with the following limitations:

> [she could] never climb ladders, ropes, or scaffolds; never work at unprotected heights; never work with hazardous machinery; only occasional stooping, crouching, kneeling, and crawling; can perform jobs that do not require concentrated exposure to pulmonary irritants (e.g. dust, fumes, odors, and gases) and poorly ventilated areas; can understand, remember, and carry out simple instructions; can maintain

5

> attention and concentration for two-hour periods at a time; can make simple work-related decisions; can adapt to routine and infrequent workplace changes; and can have frequent interaction with coworkers and supervisors, but no interaction with the general public.

(R. 960).

At the fifth step, the ALJ concluded Kimbrough could not perform her past relevant work. (R. 970). Proceeding to the final step, the ALJ found Kimbrough was a "younger individual" on the alleged onset date, with at least a high school education and the ability to communicate in English. (*Id.*). Relying on testimony from a vocational expert, the ALJ determined there were a significant number of jobs in the national economy that someone in Kimbrough's position could perform. (*Id.* at 971). Based on this evidence, the ALJ ultimately concluded Kimbrough was not disabled and was not entitled to benefits. (*Id.* at 971-72).

## III.  STANDARD OF REVIEW

A district court's role in reviewing claims brought under the Social Security Act is narrow. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles*

*v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* It is "more than a scintilla, but less than a preponderance."  *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV.   DISCUSSION

Kimbrough raises three issues on appeal.  First, she contends the ALJ failed to adequately address the effects of her pain medication—the issue on which Kimbrough's first appeal was remanded to the Commissioner. (Doc. 17 at 2).  Next, Kimbrough argues the ALJ failed to clearly articulate reasons for giving less weight to the opinion of examining psychologist David Wilson, Ph.D.  (*Id.*).[3]  Finally, Kimbrough contends the ALJ erred in relying on her daily activities to undermine her allegations. (*Id.*).  Kimbrough's arguments are addressed in turn.

### A.   **Medication Side Effects**

As previously mentioned, the only issue addressed by the court during Kimbrough's first appeal was the failure to consider her testimony that she slept for

---

[3] Kimbrough asserted this argument in her previous appeal. (R. 1087).  However, the court only addressed the ALJ's failure to address medication side effects. (*Id.*).

much of the day due to side-effects from her pain medication. During the hearing on remand, Kimbrough testified: (1) there had been no change in her condition since the initial hearing; and (2) side-effects of her medication required her to stay in bed four or five days a week. (R. 987). Kimbrough's brief cites to medical records reflecting her complaints of insomnia. (Doc. 17 at 14-17). However, as the Commissioner asserts, the medical records on which Kimbrough relies reveal she complained of the inability to sleep at night, not that side effects from her medication caused her to sleep during the day. (*See* Doc. 19 at 5-6). The ALJ made the same distinction, noting Kimbrough complained of insomnia, not that her prescribed medication caused daytime somnolence. (R. 962).

More importantly, the ALJ pointed to the dearth of objective medical evidence supporting Kimbrough's subjective testimony that side-effects of her pain medication caused daytime drowsiness. (R. 963-67). Review of the objective medical evidence cited by the ALJ confirms her interpretation of these records. (*E.g.* R. 378-79, 382-83, 690-92, 698, 706-10, 742, 929-30, 932-33). The foregoing constitutes substantial evidence to support the ALJ's conclusion that Kimbrough's reports of daytime somnolence as a medication side-effect were not as severe as alleged. This is particularly true given Kimbrough's failure to point to any contrary evidence. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) ("claimant must introduce evidence supporting her claim that her symptoms

(including any medication side effects) make her unable to work").

### B.   Dr. Wilson's Opinion

Dr. Wilson performed a psychological consultative examination on November 18, 2015. (R. 747-52). Regarding cognition and memory, Dr. Wilson reported Kimbrough could count down from 20 without errors, could perform serial 3s to 21 before making an error, could not count backwards from 100 by 7s, could do simple math, but "was not close" on more complex calculations. (R. 750). Dr. Wilson noted Kimbrough remembered 0 of 3 items after 10 minutes and could recall only 5 digits forward and 3 digits backwards. (*Id.*). Dr. Wilson assessed Kimbrough as having "significant problems" with short-term and working memory, as well as "very deficient acquired information" and "adequate abstract reasoning." (*Id.*). Administration of the Bipolar Depression Rating Scale led Dr. Wilson to opine Kimbrough had "significant issues with her mood." (*Id.*).

Dr. Wilson summarized his findings as follows:

> Kitisha presents with a severe mood disorder, and over the course of the interview, I was able to see clear evidence of her lability of mood—she went from speaking very slowly at the beginning, to being much more animated and speaking rapidly by the end. She said her moods can vary greatly, ranging from severe depression to manic and going for days without needing to sleep. She also has significant obsessive compulsive features. She would have a great deal of difficulty relating to others in any type of job setting. Her ability to withstand the pressures of day to day occupational functioning is highly impaired.

(R. 750-51).

Dr. Wilson diagnoses were Bipolar Disorder (Mixed), Obsessive Compulsive Disorder, and back spasms; he also estimated she possessed "low average intelligence." (R. 751). Attached to Dr. Wilson's evaluation was a "Mental Health Source Statement" on which he circled answers expressing his opinions on Kimbrough's ability to work. (R. 752). Dr. Wilson opined Kimbrough could perform very short and simple instructions but could not: (1) maintain attention, concentration, and/or pace for 2 hours at a time; (2) be punctual and/or perform scheduled activities; (3) sustain an ordinary routine without supervision; (4) adjust to routine and infrequent work changes; (5) respond appropriately to supervisors' criticism; (6) interact appropriately with coworkers; or (7) behave appropriately and adhere to basic standards of neatness and cleanliness. (*Id.*). In response to the form's query regarding how many days out of 30 Kimbrough would miss work, Dr. Wilson wrote 25. (*Id.*).

Contrary to Dr. Wilson's opinion that Kimbrough faced significant limitations across a number of so-called "paragraph B" criteria, the ALJ concluded she faced no more than moderate limitations as to any mental capability. (R. 959). The ALJ's conclusions regarding each category of mental capabilities are discussed in turn.

Regarding memory problems, the ALJ pointed to Dr. Wilson's observations that Kimbrough could count down from 20, perform serial 3s to 21, do simple math, and provide background information. (R. 959). The ALJ also cited medical records

11

from treating sources reflecting Kimbrough had good insight, logical thought process and thought content, as well as normal memory and good judgment. (*Id.*; *see* R. 734, 933, 1379, 1386, 1394, 1404, 1425, 1434, 1445, 1465, 1475, 1485).

As to interacting with others, the ALJ relied on Kimbrough's treatment records. (R. 959). The ALJ noted these records did not show Kimbrough was uncooperative or inappropriate with medical staff; she also cited Kimbrough's self-reported ability to shop and attend church. (*Id.*). These conclusions are supported by objective medical evidence the ALJ cited. (*See* R. 260-61, 268-69, 933; *see also, e.g.,* R. 733, 1471, 1501 (reporting symptoms made it "somewhat difficult" to perform work and/or household chores and "get along with other people")).

Regarding concentration, persistence, and maintaining pace, the ALJ cited Kimbrough's self-reported ability to prepare meals, perform household chores, handle finances, and drive. (R. 959). The ALJ also concluded Kimbrough's longitudinal treatment records did not show more than moderate limitations in these areas. (*Id.*). These conclusions are supported by objective medical evidence the ALJ cited. (*See* R. 258-60, 266-67, 742).

As for adapting or managing herself, the ALJ noted the treatment records did not show Kimbrough had significant problems maintaining hygiene, grooming, and attire. (R. 959-60). The ALJ also noted Kimbrough's ability to interact and cooperate with medical staff, as well as her self-reported ability to perform personal

care, drive, shop, and handle her finances. (R. 960). Again, these conclusions are supported by objective medical evidence the ALJ cited. (R. 259-60, 266, 732, 929-30, 932-33, 1333-34).

Kimbrough contends the ALJ erred by not providing sufficiently clear reasons for rejecting Dr. Wilson's opinion. (Doc. 17 at 27-28). Contrary to Kimbrough's assertion, the ALJ explained she gave Dr. Wilson's opinion little weight because it was inconsistent with her activities of daily living and her longitudinal medical records. (R. 969). Moreover, the ALJ's conclusion was legally and factually defensible. First, as a one-time examiner, Dr. Wilson's opinion is not entitled to any particular weight.[4] *Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). And a claimant's daily activities can undermine an examining physician's contradictory opinion. *See Evans v. Commissioner, Soc. Sec. Admin.*, 551 F. App'x 521, 524 (11th Cir. 2014). Moreover, the ALJ's conclusions regarding Dr. Wilson's opinions are supported by substantial evidence.

### C. **Kimbrough's Daily Activities**

Finally, Kimbrough briefly argues the ALJ erred to the extent he used Kimbrough's daily activities to undermine her testimony. (Doc. 17 at 28). An ALJ can rely on a claimant's daily activities to show her symptoms are not as severe as

---

[4] Although the treating physician rule is not at issue, it would apply to this case because Kimbrough filed her claim prior to March 27, 2017. *See Miller v. Kijakazi*, No. 20-656-GMB (N.D. Ala. *entered* Sept. 14, 2021), Doc. 16 at 11.

alleged. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Here, the ALJ did not rely exclusively on Kimbrough's daily activities to discount her testimony regarding the severity of her symptoms. Indeed, as discussed above, the ALJ also cited extensively to medical records that undermined Kimbrough's claims of debilitating symptoms. (R. 959-969). The ALJ's analysis in this regard is legally proper, and her conclusions are supported by substantial evidence.

## V. CONCLUSION

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 28th day of September, 2022.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE